# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PAUL ROBERTS,<br>    **Plaintiff,**<br><br>   v.<br><br>AMERICAN AIRLINES,<br>    **Defendant.** | CIVIL ACTION<br><br><br><br>NO. 20-2202 |

DuBois, J.                                    November 4, 2020

## **M E M O R A N D U M**

### I.   INTRODUCTION

This lawsuit arises from an employment dispute between plaintiff, Paul Roberts, and defendant, American Airlines, Inc. Plaintiff alleges that (1) defendant violated the Philadelphia Fair Practices Ordinance and the Pennsylvania Human Rights Act by terminating plaintiff's employment in 2017 in retaliation for the filing by plaintiff of a grievance against defendant alleging unlawful discrimination in 2014, and (2) the 2017 termination violated the settlement agreement that resolved the 2014 grievance. Presently before the Court are plaintiff's Motion to Remand and defendant's Motion to Dismiss. For the reasons that follow, plaintiff's Motion to Remand is denied, and defendant's Motion to Dismiss is denied.

### II.   BACKGROUND[1]

#### A. Plaintiff's First Termination and Settlement Agreement

Plaintiff is a Jamaican American male residing in Philadelphia, Pennsylvania. Fourth Amended Complaint ("FAC") ¶ 1. Defendant is an airline incorporated in Delaware with its principal place of business in Tarrant County, Texas. Not. of Removal ¶ 10; Def.'s Mot. Dismiss

---

[1] As required on a motion to dismiss and motion to remand, the Court accepts all such factual allegations in the Fourth Amended Complaint as true.

at 2.

Plaintiff began his employment with defendant as a fleet agent on June 21, 2004 in Philadelphia, Pennsylvania. FAC ¶¶ 8, 12. "As a fleet agent, [plaintiff's] duties entailed loading and unloading aircraft cargo, handling and transferring baggage, and marshaling aircrafts." *Id.* ¶ 13. Defendant terminated plaintiff's employment in or around October 2014. *Id.* ¶ 14. In response, plaintiff filed a grievance with the Pennsylvania Human Relations Commission ("PHRC"), alleging defendant unlawfully terminated his employment based on his race and sex, and a union grievance with the International Association of Machinists and Aerospace Workers. *Id.* ¶¶ 15-16.

"[O]n July 18, 2016, Plaintiff entered into a settlement agreement with the Defendant which permitted Plaintiff to return to work on the condition that he agree to a one-year probationary period." *Id.* ¶ 18. The settlement agreement (the "Agreement") provides that, if defendant believes plaintiff (the "Employee") violated the terms of the Agreement, defendant will hold a hearing at which defendant "will discuss with Employee the evidence in support of its belief that Employee has failed to comply with the terms and conditions of this Agreement." FAC Ex. A ¶ 7 § (b). Under the Agreement, the "Employee and/or Employee's Union representative will have the opportunity to present any evidence demonstrating their belief that Employee has not violated the terms of this Agreement." *Id.* The Agreement also contains a forum selection clause providing that any claim arising out of the Agreement "will be brought in the state or federal courts sitting in Tarrant County, Texas." *Id.* ¶ 20.

Plaintiff's one-year probationary period under the Agreement was scheduled to end July 12, 2017. FAC ¶ 25. Plaintiff alleges that "at all times relevant to this complaint,

2

Defendant and its management were aware that Plaintiff's probationary period ended on July 12, 2017." *Id.* ¶ 25.

### B. Plaintiff's Return to Work and Second Termination

Plaintiff alleges that, on May 6, 2017 he "was falsely accused of leaving his regularly scheduled work station without informing the Lead Supervisor." FAC ¶ 28. As a result of this accusation, defendant conducted an investigation and board hearing, led by manager Bruce Lancaster, to determine whether plaintiff violated the Agreement. *Id.* ¶ 28. According to plaintiff, "these false allegations could not be sustained" for two reasons. *Id.* ¶ 28. First, May 6, 2017 was a Saturday, and plaintiff did not regularly work Saturdays, meaning he did not have a "regularly scheduled work station." *Id.* ¶ 28. Second, defendant accused plaintiff of "leaving his post at a gate that he was not even working" that day. *Id.* ¶ 28.

On May 17, 2017, while plaintiff was working at his assigned post, defendant "broadcast[ed]" that management was searching for him. *Id.* ¶ 29. In response, plaintiff "left his post to report to the manager, Bruce Lancaster." *Id.* ¶ 30. Lancaster told plaintiff he was not looking for him. *Id.* ¶ 31. Plaintiff alleges this was a "deliberate attempt by Defendant to manufacture cause for Plaintiff's termination by getting him to leave his post for no reason." *Id.* ¶ 32.

"On June 6, 2017, Plaintiff was assigned to a plane that ultimately would be delayed over two hours. After waiting outside for over two hours for the plane to be fixed, Plaintiff could no longer hold himself." *Id.* ¶ 34. Plaintiff asked for permission to leave his post to use the restroom. *Id.* ¶ 35. The Lead Supervisor, Vince Troil, gave plaintiff permission to do so. *Id.* ¶ 36. While he was using the restroom, Troil informed Lancaster "the plane was ready to go and

radioed for another" fleet agent. *Id.* ¶ 37. "In accordance with everyday company policy and practice another [fleet agent] arrived and the plane departed without further incident." *Id.* ¶ 37.

The next day, plaintiff "was informed by letter that a meeting was to be held on June 8, 2017 to determine if he had violated his settlement agreement." *Id.* ¶ 39. The letter did not provide plaintiff with an explanation of the claimed violation. *Id.* ¶ 40. At the hearing, plaintiff asked for an explanation, but the senior manager, Manal El-Nadal, said that he "didn't have an answer." *Id.* ¶ 43. "Plaintiff had no opportunity to properly present evidence demonstrating he in fact did not breach the [A]greement." *Id.* ¶ 42. As such, plaintiff alleges the hearing violated the procedures outlined in the Agreement. *Id.* ¶¶ 42; 82-84.

Plaintiff later learned that he was accused of leaving his post without permission when he went to the restroom. *Id.* ¶ 44. "Accordingly, Plaintiff produced and submitted to Defendants [sic] board an affidavit written and signed by Lead Supervisor Vince Troil. The Employee Statement describes the incident in detail and states unequivocally that Plaintiff had asked Mr. Troil permission to leave his post to go to the bathroom that day and was told to go." *Id.* ¶¶ 46-47; *see also* Pl.'s FAC Ex. B.

"Despite his Supervisor's exculpatory statement that Plaintiff did not violate any company rules, regulations, policies or procedures, on June 15, 2017, Plaintiff was unceremoniously terminated by Defendant via letter. Defendant's termination letter does not provide any reason for termination other than that Plaintiff violated the July 2016 employment agreement." FAC ¶¶ 49-50.

### C. Procedural History

Plaintiff filed the first Complaint in this matter on June 20, 2019 in the Court of Common Pleas of Philadelphia County.[2] In that Complaint, plaintiff asserted claims of retaliation under federal and state law and breach of contract and demanded damages in excess of the arbitration limit, not a specific amount. Defendant removed the case to federal court based on federal question jurisdiction. On September 19, 2019, plaintiff filed the First Amended Complaint, in which he withdrew all federal law claims. He subsequently filed a Motion to Remand, which was granted.

Plaintiff filed two additional amended complaints as the case proceeded in state court, on February 3, 2020 ("Second Amended Complaint") and February 24, 2020 ("Third Amended Complaint"), respectively. None of plaintiff's amended complaints stated an amount in controversy.[3]

On February 5, 2020, as the case proceeded in state court, defendant served plaintiff with Requests for Admission asking plaintiff, *inter alia*, to admit or deny that he was seeking damages in excess of $75,000. *See* Def.'s Dismiss Ex. 2. Plaintiff responded on April 30, 2020. Def.'s Resp. to Mot. Remand Ex. 3. He answered:

> Plaintiff admits that he seeks damages in excess of the statutory threshold for arbitration under the Pa. R. C. P. Plaintiff can neither

---

[2] Plaintiff alleges, "The relevant portions of this action have been administratively processed with the City of Philadelphia Commission on Human Relations (PCHR) and dual-filed with the Pennsylvania Human Relations Committee (PHRC). . . . All conditions precedent have been met in accordance with administrative proceedings handled by any of the agencies mentioned above." FAC ¶¶ 9-10.

[3] Plaintiff filed a Case Management Memorandum on February, 21, 2020, while the case was pending in state court. *See* Def.'s Response to Mot. Remand Ex. 1. Plaintiff did not include an amount in controversy in the memorandum. Rather, on the line that asked for plaintiff's demanded monetary damages, plaintiff wrote, "Back pay and emotional distress." *Id.* Plaintiff also sent defendant a Demand Letter on March 20, 2020. Pl.'s Reply to Mot. Remand Ex. 1. In the letter, plaintiff stated he would settle the case for $75,000. *Id.* Plaintiff stated, "Given the facts of this case, should it proceed to trial, a Philadelphia jury would likely award significantly higher damages including three years back pay, compensatory damages, as well as attorney's fees and costs." *Id.*

confirm nor deny Defendants [sic] hypothetical number as Plaintiff
has not yet calculated damages as damages continue to accrue.

Def.'s Resp. to Mot. Remand Ex. 3.

Defendant also served plaintiff with Interrogatories asking plaintiff, *inter alia*, whether he had secured other employment after his termination by defendant. Def.'s Not. of Removal Ex. 1 at 2. On April 30, 2020, plaintiff responded and disclosed that he was unemployed until May 2019.[4] Def.'s Not. of Removal Ex. 1 at 2-18. With knowledge of plaintiff's wages while he was employed by defendant and the amount of time plaintiff was out of work, defendant concluded that the amount in controversy exceeded $75,000. Not. of Removal ¶ 16.

On May 8, 2020, defendant removed the case a second time, asserting diversity jurisdiction. On June 8, 2020, plaintiff filed a Fourth Amended Complaint ("FAC"), in which he alleged claims of retaliation under the Philadelphia Fair Practices Ordinance ("PFPO") and Pennsylvania Human Rights Act ("PHRA") (Count I) and a claim of breach of contract (Count II).

Plaintiff filed a Motion to Remand on June 8, 2020. Defendant filed its Response on June 17, 2020, and plaintiff filed his Reply on June 24, 2020. Defendant filed a Motion to Dismiss plaintiff's FAC on June 22, 2020. Plaintiff filed his Response on July 6, 2020, and defendant filed its Reply on July 14, 2020. The Motions are thus ripe for decision.

**III.     LEGAL STANDARD**

    **A.  Plaintiff's Motion to Remand**

In the absence of a federal question, removal to federal court requires complete diversity of citizenship of the parties, that the amount in controversy exceeds $75,000, and that "none of

---

[4] Plaintiff's interrogatory response states his next employment lasted from May 2019 to March 2019. Def.'s Not. of Removal Ex. 1 at 15. Defendant contends that the typographical error is immaterial because, even if plaintiff returned to work in May 2018, his claim for back pay would exceed $75,000. Not. of Removal ¶ 16 n. 1.

6

the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b). "[I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). The thirty-day period begins when defendant "would have known to a legal certainty that Plaintiff's damages exceeded $75,000." *Bishop v. Sam's East, Inc.*, No. 08-cv-4550, 2009 WL 1795316, at *2 (E.D. Pa. June 23, 2009).

In evaluating a motion for remand, "the removal statute should be strictly construed and all doubts should be resolved in favor of remand." *Abels v. State Farm Fire & Casualty Co.*, 770 F.2d 26, 29 (3d Cir. 1985). The party asserting federal jurisdiction has the burden of proving that subject-matter jurisdiction exists. *Boyer v. Snap–On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990).

### B. Defendant's Motion to Dismiss

"The purpose of a 12(b)(6) motion to dismiss is to test the legal sufficiency of the complaint." *Nelson v. Temple Univ.*, 920 F. Supp. 633, 634 n.2 (E.D. Pa. 1996). To survive a motion to dismiss, plaintiffs must allege "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. In assessing the plausibility of the plaintiff's claims, a district court first identifies those allegations that constitute nothing more than mere "legal conclusions" or "naked assertion[s]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 564 (2007). Such allegations are

"not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The court then assesses "the 'nub' of the plaintiff['s] complaint—the well-pleaded, nonconclusory factual allegation[s]"—to determine whether it states a plausible claim for relief. *Id.* at 680. "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

## IV.  ANALYSIS

### A. Plaintiff's Motion to Remand

Defendant received plaintiff's Answers to Interrogatories on April 30, 2020 and removed the case pursuant to 28 U.S.C. § 1446(b)(3) on May 8, 2020. Plaintiff does not dispute that the parties are diverse, that the amount in controversy exceeds $75,000, or that defendant is not a citizen of Pennsylvania. Rather, plaintiff contends removal was improper because (1) § 1446(b)(3) applies only when the case was not previously removable; and (2) defendant was on notice that the case was removable more than thirty days before it removed the case. Mot. Remand at 5-6. The Court addresses each argument in turn.

Plaintiff alleges that, because this case was previously removable under federal question jurisdiction—and, in fact, was removed—removal under § 1446(b)(3) is not permissible. Mot. Remand at 5-6. In response, defendant avers that § 1446(b)(3) permits re-removal when a new basis for removal arises. Def.'s Resp. to Mot. Remand at 6. The Court agrees with defendant on this issue. When a defendant properly removes the case on one ground and the case is subsequently remanded, the defendant is permitted to remove the case a second time if further developments establish another basis for removal. *Whittaker v. CCIS North of Philadelphia*, No. 10-cv-1095, 2010 WL 1644492, at *3 (E.D. Pa. Apr. 22, 2010) (in remanding case after plaintiff

withdrew her federal claims, holding that, if plaintiff "attempt[s] to re-plead her [federal] claim in state court…[d]efendant could once again remove the case"). Therefore, the fact that defendant has previously successfully removed this case does not prohibit re-removal based on new developments.

Second, plaintiff avers that, if the case is removable under § 1446(b)(3), defendant's removal is untimely because the Second Amended Complaint,[5] filed on February 3, 2020, sought damages in excess of $75,000 and defendant did not file its Notice of Removal until May 8, 2020.[6] Mot. Remand at 6. Because more than thirty days passed between the filing of the Second Amended Complaint, allegedly putting defendant on notice that the case was removable, and the removal of the case, plaintiff contends the removal is time-barred. In response, defendant avers that none of plaintiff's filings stated an amount in controversy, and so it was unable to determine the amount in controversy until it received plaintiff's Answers to Interrogatories on April 30, 2020. Def.'s Resp. to Mot. Remand at 7-8. The Court agrees with defendant on this issue.

On April 30, 2020, in addition to his Answers to Interrogatories, plaintiff provided defendant with his Answers to Requests for Admission, in which plaintiff stated he did not know whether the amount in controversy exceeded $75,000. Def.'s Resp. to Mot. Remand Ex. 3. Plaintiff now avers defendant should have known the amount in controversy exceeded $75,000 nearly three months sooner, on February 3, 2020. The Court will not hold defendant responsible for knowledge about plaintiff's claim that plaintiff alleges he himself did not possess. Defendant

---

[5] Plaintiff refers to the Amended Complaint filed on February 3, 2020 as "Plaintiff's Amended Complaint." Mot. Remand at 3. For sake of clarity and consistency, the Court numbers the complaints beginning with the initial Complaint filed on June 3, 2019. The First Amended Complaint, therefore, was filed on September 19, 2019, after this case was removed the first time. The complaint filed on February 3, 2020 is the Second Amended Complaint.
[6] Plaintiff also alleges defendant was on notice that the amount in controversy exceeded $75,000 based on the Case Management Memo (filed in state court February 21, 2020), Third Amended Complaint (filed in state court February 24, 2020), and the Demand Letter (sent to defendant March 20, 2020).

9

was first able to calculate to a "legal certainty" the alleged damages from plaintiff's Answers to Interrogatories on April 30, 2020, after learning plaintiff was out of work until May 2019. *Bishop*, 2009 WL 1795316, at *2. The thirty-day removal period began at that time. Defendant filed its Notice of Removal eight days later on May 8, 2020. Thus, defendant's removal was timely.

Because § 1446(b)(3) allows defendant to re-remove this case and defendant's removal was timely, plaintiff's Motion to Remand is denied.

### B. Defendant's Motion to Dismiss

#### 1. Retaliation Claim

The PHRA and PFPO prohibit employers from retaliating against employees for complaining about or reporting racial discrimination or retaliation. *Ahern v. Eresearch Tech., Inc.*, 183 F. Supp. 3d 663, 670 (E.D. Pa. 2016). Retaliation claims under the PHRA and PFPO are governed by the *McDonnell Douglas* burden-shifting framework. *See Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir. 1997) (interpreting the requirements of plaintiff's PHRA claim the same as plaintiff's Title VII claim); *Bines v. Williams*, No. 17-cv-4527, 2018 WL 4094957, at *5 (E.D. Pa. Aug. 27, 2018) ("The PHRA and PFPO are interpreted consistently."). Under the *McDonell Douglas* framework, a plaintiff first bears the burden of establishing a *prima facie* case of retaliation. *Moore v. City of Phila.*, 461 F.3d 331, 340 (3d Cir. 2006), as amended (Sept. 13, 2006).

To establish a *prima facie* case of retaliation, a plaintiff must show that (1) he engaged in protected activity; (2) the defendant took an adverse employment action against him during or after the protected activity; and (3) there was a causal link between the protected activity and the adverse employment action. *Id.* at 340–41. To prove causation at the *prima facie* stage, "a

plaintiff need only proffer evidence sufficient to raise the inference that [his] engagement in a protected activity was the likely reason for the adverse employment action." *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 253 (3d Cir. 2017). This evidence can be (1) an "unusually suggestive" temporal proximity between the protected activity and the allegedly retaliatory action, (2) a pattern of antagonism coupled with timing to establish a causal link, or (3) other "evidence gleaned from the record as a whole from which causation can be inferred." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280-81 (3d Cir. 2000).

Defendant does not dispute that plaintiff's termination constituted an adverse employment action. Mot. Dismiss at 5-8. Defendant claims, however, that plaintiff did not engage in a protected activity and that, even if he did, plaintiff has failed to allege causation. The Court addresses each argument in turn.

Defendant claims "Roberts' union grievance does not constitute protected activity" because it did not allege unlawful discrimination. Mot. Dismiss at 5. However, in addition to his union grievance, plaintiff filed a complaint with the PHRC, alleging discrimination based on race and sex, which is a protected activity.[7] FAC ¶¶ 15-16; *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 195 (3d Cir. 2015). Therefore, the Court concludes plaintiff has alleged that he engaged in a protected activity.

Alternatively, defendant claims plaintiff "does not allege facts that, if proven, would demonstrate a causal connection between his 2014 protected activity and his June 2017 termination more than two and a half years later." Mot. Dismiss at 6. Defendant alleges that two

---

[7] The FAC is not clear as to what specific allegations plaintiff made in his union grievance with the International Association of Machinists and Aerospace Workers. FAC ¶ 16 ("Plaintiff also filed a union grievance with the International Association of Machinists and Aerospace Workers."). Regardless of whether plaintiff alleged unlawful discrimination in that grievance, however, the FAC is clear that plaintiff's complaint with the Pennsylvania Human Rights Commission alleged "discrimination based on race and sex." FAC ¶¶ 14-15.

and a half years is "far too long for an inference of causation to arise based on the temporal proximity of the two events" and that plaintiff's other allegations are insufficient to infer causation. Mot. Dismiss at 6-7. The Court disagrees with defendant on this issue.

Plaintiff alleges defendant made three attempts to terminate plaintiff's employment without cause in the final ten weeks of his probationary period: first by wrongfully accusing plaintiff of leaving his regularly scheduled work station, which led to a disciplinary hearing; second by making a false announcement that management was looking for plaintiff so that plaintiff left his work station; and third by wrongfully accusing plaintiff of breaching the terms of the Agreement when he left his post with permission to use the restroom. The final accusation ultimately led to plaintiff's termination, allegedly in violation of the Agreement.[8] Taken together, plaintiff claims a concerted effort by defendant to retaliate against plaintiff, for filing a grievance, at the last opportunity before plaintiff's probationary period ended—as set forth in the settlement agreement resolving the grievance itself. The Court concludes these allegations are sufficient to show causation at this stage of the proceedings. *See Webb v. Merck & Co., Inc.*, 450 F. Supp. 2d 582, 601 (E.D. Pa. 2006) (plaintiff alleged a causal connection where the defendant fabricated accusations against plaintiff, conducted an unfair investigation into the accusations, ignored plaintiff's evidence in his defense, and repeatedly attempted to catch plaintiff "making a reprimandable error").

---

[8] Plaintiff alleges the way in which defendant conducted the hearing violated the terms of the agreement because defendant did not present evidence to support its accusations against plaintiff and plaintiff was not given a meaningful opportunity to present evidence to defend himself. In fact, at the hearing, plaintiff alleges Manal El-Nadal, said that he "didn't have an answer" as to what the accusations against plaintiff were. FAC ¶ 43. Providing inconsistent answers to a plaintiff regarding his termination is evidence of causation. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000).

Because plaintiff has stated a *prima facie* case of retaliation under the PHRA and PFPO, defendant's Motion to Dismiss is denied to the extent that it seeks dismissal of plaintiff's retaliation claims. In so ruling, the Court notes that after a plaintiff states a *prima facie* case of retaliation, the burden shifts to the defendant to "articulate a legitimate, non-discriminatory reason for the adverse employment action." *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008). Defendant did not provide a legitimate non-discriminatory reason for terminating plaintiff in this case.

**2. Breach of Contract Claim**

Defendant next contends plaintiff's breach of contract claim should be dismissed because it is subject to the forum selection clause in the Agreement, which requires plaintiff to bring this action in a state or federal court sitting in Tarrant County, Texas. Mot. Dismiss at 8. "In the Third Circuit, a valid forum selection clause which allows suit in another federal forum is enforced by either a motion to transfer venue, pursuant to 28 U.S.C. § 1404(a) [ ] or a motion to dismiss for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6)." *Kahn v. American Heritage Life Ins. Co.*, No. 06-cv-1832, 2006 WL 1879192, at *7 (E.D. Pa. Jun 29, 2006). A court deciding a motion to dismiss as a means to enforce a forum selection clause, without a motion to transfer, may nonetheless analyze the motion under the framework of § 1404(a). *Salovaara v. Jackson Nat. Life Ins. Co.*, 246 F.3d 289, 298-99.

In this case, defendant moves to dismiss plaintiff's breach of contract claim "with leave to refile only in Tarrant County, Texas." Def.'s Reply to Mot. Dismiss at 5. Because the ultimate goal of defendant's motion to dismiss—requiring plaintiff to bring this claim in Tarrant County, Texas—is the same as that of a motion to transfer—sending the case directly to Tarrant

13

County, Texas—the Court analyzes defendant's Motion to Dismiss plaintiff's breach of contract claim under the § 1404(a) framework.[9]

Section 1404(a) provides that transfer is proper when it is "for the convenience of parties and witnesses [and] in the interest of justice." 28 U.S.C. § 1404(a). In the absence of a forum selection clause, this analysis requires an evaluation of "all relevant factors," including "the private and public interests protected by the language of § 1404(a)." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). The existence of a forum selection clause is not dispositive of the analysis, however. *Id.* at 880; *see also Jon Feingersh Photography, Inc., v. Pearson Educ., Inc.*, 978 F. Supp. 2d 463, 468 (E.D. Pa. 2013) ("To avoid piecemeal litigation, courts have [ ] refused to enforce a forum selection clause in cases where the forum selection clause covers only some, but not all of the claims in the action."). When there is a valid forum selection clause, the court "must deem the private-interest factors to weigh entirely in favor of the preselected forum" and thus considers only the public interest. *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court. for the W. Dist. of. Tex.*, 571 U.S. 49, 64 (2013). The court, therefore, should transfer—or dismiss, as in this case—a claim that is subject to a forum selection clause only in the "unusual cases" in which the public interest in declining to enforce the clause outweighs the private interest in enforcing it. *Id.*

Because the Agreement contains a forum selection clause, the Court considers only public-interest factors in the second step and will dismiss plaintiff's breach of contract claim

---

[9] As an initial matter, § 1404(a) applies only when venue is proper in both the current District and the proposed transferee court. *See* Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995). Venue is proper in this District pursuant to § 1391(b)(2) because a significant portion of the events giving rise to the claim—plaintiff's employment, the 2014 grievance, and plaintiff's termination—occurred in Philadelphia. Venue is also proper in Tarrant County, Texas pursuant to 28 U.S.C. § 1391(b)(1) because defendant's principal place of business is located there.

only if those factors outweigh the private interest in enforcing the forum selection clause.[10] The Third Circuit identified six public-interest factors to consider in conducting the analysis: "[1] the enforceability of the judgment; [2] practical considerations that could make the trial easy, expeditious, or inexpensive; [3] the relative administrative difficulty in the two fora resulting from court congestion; [4] the local interest in deciding local controversies at home; [5] the public policies of the fora; and [6] the familiarity of the trial judge with the applicable state law in diversity cases." *Jumara*, 55 F.3d at 879-80 (citations omitted).

The public-interest factors weigh against dismissal of this claim. The two claims in this case have significant factual overlap, and severance of the breach of contract claim "would harm judicial economy substantially by requiring duplicative discovery, witness testimony, and evidentiary development." *In re LMI Legacy Holdings, Inc.*, 62 B.R. 235, 254 (Bankr. D. Del. 2016); *see also Eastcott v. McGraw-Hill Global Education Holdings, LLC*, No. 16-cv-904, 2016 WL 3959076, at *3 (E.D. Pa. July 22, 2016) ("Judicial economy heavily favors litigating all claims together."). In light of the temporary continuance of civil trials in both this District and in Texas due to the COVID-19 pandemic, necessitating two trials would serve to further congest the courts. *See* Def.'s Mot. Dismiss at 10; Pl.'s Resp. to Mot. Dismiss at 7. The "practicalities of a transfer" or dismissal would cause further delay in a case that has been pending for over a year and in which discovery has already begun. *Eastcott*, 2016 WL 3959076, at *3. Moreover, defendant conducts business within this District, and the events giving rise to the claim occurred in this District, "creating a local stake in the outcome of this dispute." *Id.*

---

[10] In his Response, Plaintiff argues the forum selection clause is invalid. Pl.'s Resp. to Mot. Dismiss at 6-7. The Court does not address this argument because, even assuming the forum selection clause is valid, the public interest factors weigh against transfer in this case.

The Court concludes the public factors weigh against transfer and outweigh the private interest in enforcing the forum selection clause. Therefore, the Court denies defendant's Motion to Dismiss.

## V.  CONCLUSION

For the foregoing reasons, plaintiff's Motion to Remand and defendant's Motion to Dismiss are denied. An appropriate order follows.